## IN RE THE STATE HOUSE FUND.

Where by a vote of the people the General Assembly were "authorized and directed to provide for the issue of State bonds in an amount not to exceed the sum of $1,500,000, so much of said money as may be necessary to be applied

to the purchase of a site for, and the erection of, a new state house," the fund derived from the bonds issued in pursuance of such authority cannot be legally applied to any other purpose than that for which it was created, except by consent of the people.

The proceeds of State bonds issued in accordance with a vote of the people for the purpose of building the State Normal School, and an armory, cannot be legally used to repay into the general treasury of the State such sums as have already been appropriated by the General Assembly and expended for such purposes, unless the proposition submitted to the people to authorize the loan also contains authority to make such repayment. It is not enough that the act providing for a submission of the proposition to the people provides for such repayment.

The Constitution of Rhode Island, Art. 4, § 13, is as follows :—

SEC. 13.   The general assembly shall have no power, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion ; nor shall they in any case, without such consent, pledge the faith of the state for the payment of the obligations of others. This section shall not be construed to refer to any money that may be deposited with this state by the government of the United States.

In answer to a communication of the Governor requesting the opinion of the Supreme Court the following opinion was given, February 21, 1896.

*To His Excellency, Charles Warren Lippitt, Governor of the State of Rhode Island and Providence Plantations :*

We have received from Your Excellency a communication requesting our opinion on the following questions :

*First :*   Authority to issue State House bonds to the extent of $1,500,000 was voted by the electors on November 8th, 1892.   By Chapter 1201 of the Public Laws, passed May 24th, 1893, said bonds were finally authorized.   The proceeds of said bonds have been deposited in bank by the General Treasurer, and interest is being allowed upon the same.   The State House Commission will, probably, not use for any purposes connected with the State House during the first eight months of 1896 more than $650,000.   In such circumstances,

can the General Treasurer legally and properly use any portion of the proceeds of said State House bonds to pay the general expenses of the State during the first eight months of 1896, until the regular income of the State, to be received during said eight months, places the State in a position to return said money with interest to said State House fund ?

*Second :* In case none of the general officers of the State have, at present, the necessary power, can the Legislature, which meets January 21, 1896, authorize such temporary use of a portion of the proceeds of said State House bonds to defray the general expenses of the State as stated above ?

*Third :* In case the proper authorities should determine to issue bonds to provide funds to pay for the land required for and the cost of erecting the Rhode Island State Normal School and the proposed State Armory in the City of Providence, can provision be made in the acts authorizing said bonds, to repay into the General Treasury of the State, such sums of money as have already been appropriated by the Legislature and expended by the Rhode Island Normal School Commission and the Commission to erect a State Armory in the City of Providence, for the purposes contemplated in the acts creating such commissions ?

*Fourth :* Has the Legislature power to authorize said repayment from the proceeds of said Normal School and said State Armory bonds, or must the intention to make said repayment be specified in the act creating said bonds to be submitted to the electors ?

The proposition submitted to the people, by which authority was given for the issue of the State House bonds, was as follows : "Shall the General Assembly be authorized and directed to provide for the issue of State bonds in an amount not to exceed the sum of $1,500,000, so much of said money as may be necessary to be applied to the purchase of a site for, and the erection and completion of, a new State House?" Pub. Laws R. I. cap. 1093, of May 19, 1892. It thus appears that, by the vote of the people adopting that proposition, so much of the money received from the bonds as was necessary for the purchase of a site for a new State House

and its erection and completion was to be devoted to that specific purpose.    The surplus only, which may remain after this purpose has been accomplished, can be devoted to other uses.    It is impossible to determine in advance what, if any portion of the moneys, the proceeds of these bonds, will not be needed for the purpose for which they were authorized. This being the case, and no authority having been conferred, by vote of the people, on the General Treasurer or any general officer, or on the General Assembly, to divert so much of the fund as may be required for the specific purpose for which it was voted, and there being no inherent authority known to us in any general officer or the Legislature to do so, we feel constrained to answer the first two questions propounded in the negative, notwithstanding the moral certainty, amounting almost to absolute certainty, that the money can be returned with interest to the State House fund, before it will be needed by the State House Commissioners, from the regular income of the State to come in during the next eight months.    The fund is analogous to a trust fund, and cannot be legally applied to any other purpose than that for which it was created, except by the consent of the people by whom it was created.

We reply to the third and fourth questions propounded that, in case it is determined to issue bonds for the purposes mentioned in the third question, we are of the opinion that it will not be enough to provide in the acts authorizing the submission of propositions to the people for the repayment into the General Treasury of the moneys already appropriated by the Legislature, and expended by the Rhode Island Normal School Commission and the Commission to erect the State Armory, but that the proposition submitted to the people to authorize the loans should also contain authority for such repayment; that while it may not be necessary to specify particularly the repayment into the General Treasury, the proposition should be so framed as to evince an intention that the loan authorized is to be used for the payment of moneys already expended, or, as in the case of the proposition for creating the State House loan, to leave an unexpended

surplus in the General Treasury, which of course would be subject to the action of the General Assembly.

<div align="right">

CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
GEORGE A. WILBUR,
HORATIO ROGERS,
WM. W. DOUGLAS.